### 23933.  POULOS *v.* THE STATE.

DECIDED MARCH 30, 1934.

*J. Lon Duckworth, Samuel J. Boykin,* for plaintiff in error.
*Emmett Smith, solicitor,* contra.

GUERRY, J. "'Game laws' is a title commonly used to describe a series of statutes, which have not a logically connected design, but of which the general aim is to protect from unauthorized pursuit and killing certain birds and animals feræ naturæ which are fit for human food"—Bouvier's Law Dictionary. Black's Law Dictionary defines them to be "Laws passed for the preservation of game. They usually forbid the killing of specified game during certain seasons." It is said that the immortal Bard of Avon was once sentenced for killing a deer on a game preserve. Game laws are generally upheld on the ground of the police power of the State. *Allen* v. *State,* 11 *Ga. App.* 75 (74 S. E. 706). Under the law of this State now in force, it is made the duty of the game commissioner to look to the observance of the laws enacted for the "protection, propagation, and preservation of game animals, game birds, or other birds and fish in this State." The expense of this work is to be borne by revenue from the sale of licenses required of those who shall hunt during open seasons. Game birds and animals and fur-bearing animals are specially named in sections 2, 3, 4, 5, 7, and 8 of the act of 1925. Ga. L. 1925, p. 302; amended, Ga. L. 1931, p. 173. The animals and birds named therein are those for whose protection and preservation the law was enacted. Such birds and animals so named may not be taken or hunted or killed except during certain prescribed times. No persons may lawfully hunt, take, or kill such birds or animals, even during the open season, except on their own lands, without first obtaining a license issued as prescribed by the game and fish commissioner. Judge Hill, in the case of *Blasingame* v. *State,* 11 *Ga. App.* 809 (supra), said: "The primary purpose of the act of 1911 [Ga. L. 1911, p. 137] is the preservation of the game of this State specified in the act, by the methods and instrumentalities therein set forth." Prior to this act of 1911 certain seasons were prescribed within which time it was lawful to hunt and kill the specified game birds and animals; at other seasons it was made unlawful so to hunt. No license to hunt was required under the then-existing law. Under the act of 1911 it was necessary for one

to obtain license to hunt in the open season outside his own militia district or off his own land. As stated above, this license fund was used for the maintenance of the game and fish department. It was also provided that one might not hunt on the lands of another without the owner's consent. This provision effectuated two purposes,—the restriction of the hunting right, and thus the preservation of game, and also a strengthening of the trespass law for the benefit of the landowner. The land is protected from trespassing by hunters, whether with or without license and whether the game hunted be that specified in the act or not. The hunter must in any event have the permission of the landowner as a condition precedent to his right to hunt any sort of game.

We now come to discuss the right of a person to hunt a rabbit, which is an animal not protected by the game law and is not within any of the classes specified. All seasons, under the law, are open seasons as to the rabbit. The law affords him no protection from his enemies or pursuers. He is not within the exempted class. He may be converted into a meat for the family of the rich or the poor, in June as well as in December. If not within the class for whose benefit the law was intended, does the law require a license of those who hunt him? Is the negro and small boy, who, with small rifle or muzzle-loading shotgun, and a brindle cur or flop-eared hound, on Saturday afternoon, at the end of a week's work, goes into the lands of his neighbor, with his consent, to hear the music of the rabbit race, and perhaps secure food for a change of diet, required to obtain a license therefor? To the small boy grass-sparrows, jorees, sapsuckers, woodpeckers, and jaybirds are legitimate prey. The rabbit he lists as among the big game. However much our training and sympathy may move us to the contrary, the decision in *Blasingame* v. *State,* supra, a part of which reads as follows: "Construing the law in its entirety, so as to give force and effect to every section and to carry out the express purpose of the act, this court holds that no kind and character of game, whether designated by the act or not, can be hunted without complying with the requirements as to license," constrains us to hold that the hunting of rabbits by the defendant in this case without first having obtained a license therefor is in violation of the statute. The special assignments of error are without merit. See also *Baker* v. *State,* 19 *Ga.*

*App.* 84 (90 S. E. 983). The verdict is amply supported by evidence.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*